FILED
CHARLOTTE, N.C.
JUL 27 2005
U.S. DISTRICT COURT
W. DIST. OF N.C.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **BILL OF INDICTMENT** |
| | ) | |
| | ) | Violation: |
| v. | ) | 18 U.S.C. § 2319     3:05cr285-MU |
| | ) | 18 U.S.C. § 371 |
| | ) | 18 U.S.C. § 2 |
| JERRY MICHAEL MELVIN, JR. | ) | 17 U.S.C. § 506 |

THE GRAND JURY CHARGES:

## BACKGROUND

At all times relevant to this Indictment:

1. During the 1990s, individuals skilled in cracking digital copyright protection systems organized themselves into national and international groups called "warez" groups after the term "soft*ware*." These groups are dedicated to intellectual property "piracy," that is, the unauthorized, illegal reproduction and distribution of copyrighted computer software, including games, and digital entertainment, including movies and music. Warez groups distribute pirated software, movies and music over the Internet, and compete with one another to be the first to release new, high quality pirated products, within an elaborate underground Internet society, known as the "warez scene." Due in part to the activities of warez groups, pirated versions of software applications, movies and music are available worldwide, electronically and on optical disc, sometimes even before they are made commercially available to the public.

2. Warez groups are often structured, hierarchical organizations comprised of members in various countries who have specialized skills and roles in the piracy of digitized intellectual property. Some warez groups specialize in obtaining "pre-release" intellectual property for piracy, often from company or distribution insiders, or software testers, who have access to final versions of new products which have yet to be released to the public.

Other warez groups concentrate on "cracking" copyright protection systems by removing or otherwise circumventing copyright protection controls like encryption, serial numbers, tags, duplication controls, and/or security locks. Still other groups act as couriers, distributing pirated intellectual property over the Internet to warez sites worldwide.

3. Warez members typically store their pirated intellectual property on servers employing a protocol known as a file transfer protocol ("FTP") which allows other individuals to download pirated product from, and upload pirated product to, that server. Access to warez FTP servers, or sites, is nearly always password-protected, and many warez groups protect large FTP archive sites, containing tens of thousands of files of pirated software, movies and music, through a combination of sophisticated security measures.

4. Members of the warez scene frequently communicate with each other over the Internet using "real time" software applications and closed channels, such as "Internet Relay Chat" ("IRC"), as well as encryption to avoid detection by law enforcement. As a further security precaution, most warez members conceal their Internet identities by assuming aliases, and many disguise their Internet addresses, and thus their true locations, by routing Internet communications through another computer known as a "virtual host" or "bounce box" which is configured to appear falsely as the source of the communication.

5. The reasons why individuals become members of warez groups vary. Common to virtually all warez members, however, is the desire for personal financial gain through access to vast quantities of free software, movies and music available on warez FTP sites. A few of the larger warez groups also sell their pirated product for commercial gain. Other motives in addition to profit include the thrill and social comradery members obtain through clandestine participation in the illegal activity, and the reputation and fame that attends membership and participation in the "top" warez groups.

## COUNT ONE
### (Conspiracy)

6. Paragraphs one through five of this Indictment are hereby realleged and incorporated as if fully set forth herein.

### I. Object of the Conspiracy

7. From in or before September 2003 through April 21, 2004, both dates being approximate and inclusive, in Mecklenburg County, in the Western District of North Carolina, and elsewhere, the defendant,

### JERRY MICHAEL MELVIN, JR.,

did knowingly and voluntarily combine, conspire, confederate, and agree with others known and unknown to the grand jury willfully, and for purposes of private financial gain, to infringe a copyright by the reproduction and distribution, during a 180-day period, of at least ten (10) copies of one (1) or more copyrighted works which have a total retail value of more than $2,500, in violation of Title 18, United States Code, Section 2319(a), (b)(1) and (c)(1), and Title 17, United States Code, Section 506(a)(1) and (a)(2).

### II. Defendant's Manner and Means within the Conspiracy

8. The ways, manner and means by which the defendant, JERRY MICHAEL MELVIN, JR., sought to achieve the objects of this conspiracy included, but were not limited to, the following:

    a. It was a part of the conspiracy that the defendant, JERRY MICHAEL MELVIN, JR., would be a member of and participate in warez groups and the warez scene.

    b. It was further a part of the conspiracy that the defendant, JERRY MICHAEL MELVIN, JR., would supply digital, copyright-protected intellectual property for piracy by warez groups.

    c. It was further a part of the conspiracy that the defendant, JERRY

MICHAEL MELVIN, JR., would crack copyright protection systems embedded in digital, copyright-protected intellectual property for piracy by warez groups.

    d. It was further a part of the conspiracy that the defendant, JERRY MICHAEL MELVIN, JR., would remotely operate numerous warez FTP sites, located inside and outside the United States.

    e. It was further a part of the conspiracy that the defendant, JERRY MICHAEL MELVIN, JR., would use "shell accounts" and "virtual hosts" to access the warez FTP sites he remotely operated.

    f. It was further a part of the conspiracy that the defendant, JERRY MICHAEL MELVIN, JR., would use the aliases "Vladamir" and "Vlad" during his Internet, warez activities.

    g. It was further a part of the conspiracy that the defendant, JERRY MICHAEL MELVIN, JR., would download pirated, copyright-protected digital titles, including software applications and more particularly video games, from warez FTP sites for his own personal use.

### III. Overt Acts

  9. In furtherance of the conspiracy, and to accomplish its unlawful objectives, the defendant, JERRY MICHAEL MELVIN, JR., from September 4, 2003, through December 5, 2003, in the Western District of North Carolina and elsewhere, uploaded or caused to be uploaded approximately 17 digital files, consisting of pirated, copyright-protected software applications, including video games, to a warez FTP site and, from September 4, 2003, through December 5, 2003, in the Western District of North Carolina and elsewhere, downloaded or caused to be downloaded over 200 digital files, consisting of pirated, copyright-protected software applications, including video games, from a warez FTP site,

4

and each such upload and download constituted an overt act. Among these overt acts, to enumerate but a few, were the following:

    a. On September 4, 2003, the defendant, JERRY MICHAEL MELVIN, JR., uploaded or caused to be uploaded to a warez FTP server, located in the Western District of North Carolina, a pirated, copyright-protected digital title known as *Summer Heat Beach Volleyball*.

    b. On September 24, 2003, the defendant, JERRY MICHAEL MELVIN, JR., downloaded or caused to be downloaded from a warez FTP server, located in the Western District of North Carolina, a pirated, copyright-protected digital title known as *Dynasty Warriors 3 Xtreme Legend*.

    c. On October 15, 2003, the defendant, JERRY MICHAEL MELVIN, JR., uploaded or caused to be uploaded to a warez FTP server, located in the Western District of North Carolina, a pirated, copyright-protected digital title known as *Haunted Mansion*.

    d. On October 27, 2003, the defendant, JERRY MICHAEL MELVIN, JR., downloaded or caused to be downloaded from a warez FTP server, located in the Western District of North Carolina, a pirated, copyright-protected digital title known as *ESPN X Games Skateboarding*.

    e. On November 4, 2003, the defendant, JERRY MICHAEL MELVIN, JR., uploaded or caused to be uploaded to a warez FTP server, located in the Western District of North Carolina, a pirated, copyright-protected digital title known as *Grand Theft Auto Double Pack*.

    f. On December 5, 2003, the defendant, JERRY MICHAEL MELVIN, JR., downloaded or caused to be downloaded from a warez FTP server, located in the Western District of North Carolina, a pirated, copyright-protected digital title known as

Case 3:05-cr-00285-FDW-DCK   Document 1   Filed 07/27/05   Page 5 of 7

*Mission: Impossible: Operation Surma.*

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
(Copyright Infringement)

10. Paragraphs one through five of this Indictment are hereby realleged and incorporated as if fully set forth herein.

11. From on or about September 4, 2003, through December 5, 2003, both dates being approximate and inclusive, in Mecklenburg County, in the Western District of North Carolina, and elsewhere, the defendant,

### JERRY MICHAEL MELVIN, JR.,

willfully, and for purposes of private financial gain, did infringe a copyright by the reproduction and distribution, during a 180-day period, of at least ten (10) copies of one (1) or more copyrighted works which have a total retail value of more than $2,500.

All in violation of Title 18, United States Code, Sections 2319(a), (b)(1) and (c)(1) and 2, and Title 17, United States Code, Section 506(a)(1) and (a)(2).

## Forfeiture Allegations

12. Paragraphs one through eleven of this Indictment are hereby realleged and incorporated as if fully set forth herein.

13. Pursuant to Title 17, United States Code, Section 506(b), upon conviction of any of the offenses set forth in this Indictment, the defendant,

### JERRY MICHAEL MELVIN, JR.,

shall forfeit all infringing copies and implements, devices, and equipment used in the manufacture of such infringing copies. Such property includes, but is not limited to, the following items seized by federal agents from the premises located at 3801 Virginia Avenue,

6

Case 3:05-cr-00285-FDW-DCK   Document 1   Filed 07/27/05   Page 6 of 7

Roanoke, Virginia, on April 21, 2004, during the execution of a search warrant:

1. One Central Processing Unit in blue case.
2. Two DVDs.
3. One Maxtor hard drive, serial number G804CKVE FG08A.
4. 478 CDRs
5. Two computer chips removed from Sony Playstation
6. One Compaq Presano 5000 series Central Processing Unit, serial number 2H08FPM2POC6.

DATED:

A TRUE BILL.

_____
FOREPERSON

GRETCHEN C. F. SHAPPERT
United States Attorney

_____
COREY F. ELLIS
Assistant United States Attorney

ERIC J. KLUMB
Senior Counsel
U.S. Department of Justice

7